Lorraine SHOEMAKER and
Robert J. Shoemaker,

v.

COMMONWEALTH BANK,
a division of Meridian.

Appeal of Lorraine SHOEMAKER.

Superior Court of Pennsylvania.

Submitted July 28, 1997.
Filed Sept. 23, 1997.

Marc F. Lovecchio, Williamsport, for appellant.

William P. Carlucci, Williamsport, for appellee.

Before JOHNSON, HUDOCK and SAYLOR, JJ.

JOHNSON, Judge:

We are asked to determine whether a mortgagor who is obligated by a mortgage to maintain insurance on the mortgaged property can establish a cause of action in promissory estoppel based upon an oral promise made by the mortgagee to obtain insurance. We find no merit in those portions of the instant case sounding in fraud and breach of contract. We conclude, nevertheless, that a mortgagee's promise to obtain insurance can be actionable on a theory of promissory estoppel. Accordingly, on this appeal from the order granting summary judgment to the mortgagee, we affirm in part, reverse in part and remand for further proceedings.

Lorraine and Robert S. Shoemaker obtained a $25,000 mortgage on their home from Commonwealth Bank (Commonwealth). The mortgage agreement provided that the Shoemakers were required to "carry insurance" on the property. By January 1994, the Shoemakers had allowed the home-owners' insurance policy covering their home to expire. In 1995, the Shoemakers' home, still uninsured, was destroyed by fire. The parties disagree as to the series of events that occurred after the insurance had lapsed.

The Shoemakers allege that Commonwealth sent a letter to them, dated January 20, 1994, that informed them that their insurance had been cancelled and that if they did not purchase a new insurance policy, Commonwealth might "be forced to purchase [insurance] and add the premium to [their] loan balance." The Shoemakers further allege that Mrs. Shoemaker received a telephone call from a representative of Commonwealth in which the representative informed her that if the Shoemakers did not obtain insurance, Commonwealth would do so and would add the cost of the premium to the balance of the mortgage. The Shoemakers assert that they assumed, based on the letter and phone conversation, that Commonwealth had obtained insurance on their home. They also contend that they received no further contact from Commonwealth regarding the insurance and that they continued to pay premiums as a part of their loan payments. Only after the house burned, the Shoemakers allege, did they learn that the house was uninsured.

Commonwealth, on the other hand, admits that it sent the letter of January 20, but denies the Shoemakers' allegations regarding the contents of the alleged conversation between its representative and Mrs. Shoemaker. Commonwealth further claims that it obtained insurance coverage for the Shoemakers' home and notified them of this fact by a letter dated February 4, 1994. Commonwealth also asserts that it elected to allow this coverage to expire on December 1, 1994, and that, by the letter dated October 25, 1994, it informed the Shoemakers of this

fact and reminded them of their obligation under the mortgage to carry insurance on the property. The Shoemakers deny receiving any letter from Commonwealth regarding the insurance other than the letter dated January 20, 1994, that informed them that their policy had expired.

After the house burned down, Mrs. Shoemaker sued Commonwealth, alleging causes of action in fraud, promissory estoppel and breach of contract; the basis for all three causes of action was Commonwealth's alleged failure to obtain insurance coverage for the Shoemaker home. By order of the court, Mr. Shoemaker was joined as an involuntary plaintiff. Commonwealth then filed a motion for summary judgment.

The trial court granted Commonwealth's motion. The court noted that, even if Commonwealth had promised to obtain insurance on the Shoemakers' home, it made no representation regarding the duration of that coverage. The court concluded that because Commonwealth had actually obtained insurance, even though the policy later expired, it had fulfilled its promise to the Shoemakers. Thus, the court reasoned that because Commonwealth had made no misrepresentation and breached no promise, the Shoemakers could not prevail on any of their causes of action. Mrs. Shoemaker now appeals.

Pennsylvania Rule of Civil Procedure 1035.2 provides that:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. Thus, the court must enter summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Coleman v. Coleman,* 444 Pa.Super. 196, 199, 663 A.2d 741, 743 (1995), *appeal denied,* 543 Pa. 722, 673 A.2d 330 (1996). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Hunger v. Grand Central Sanitation,* 447 Pa.Super. 575, 578, 670 A.2d 173, 174, *appeal denied,* 545 Pa. 664, 681 A.2d 178 (1996). We will reverse the grant of a motion for summary judgment only where the court has committed an error of law. *Coleman, supra,* at 199, 663 A.2d at 743.

■ On appeal, Mrs. Shoemaker argues that the trial court erred by entering summary judgment on their fraud and promissory estoppel claims. To prevail on a fraud cause of action, a plaintiff must prove that: (1) the defendant made a misrepresentation that is material to the transaction at hand; (2) the misrepresentation was made with knowledge of the statement's falsity or with reckless disregard as to whether it was true or false; (3) the defendant made the misrepresentation with the intent of inducing reliance; (4) the plaintiff justifiably relied upon the misrepresentation; and (5) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst,* 538 Pa. 193, 207, 647 A.2d 882, 889 (1994).

Mrs. Shoemaker argues that Commonwealth made a misrepresentation to her when its representative, in a telephone conversation, stated that Commonwealth would purchase insurance coverage and add the cost of the premium to the cost of her and her husband's loan. Mrs. Shoemaker directs our attention to her deposition testimony:

Q: So you've spoken to a Commonwealth Bank representative on the issue of insurance on your home once and only once; is that correct.

A: Correct.

. . . .

Q: What do you believe [the representative] said?

A: He mentioned that there had been a letter sent to me that the insurance had expired. I didn't recall receiving the letter. He also mentioned that as far as the loan was concerned I was required to have insurance on the property. *He basically said that they would acquire insurance for me. I told them go ahead and do so because at that point I was in no financial situation to so on my own.*

. . . .

Q: So basically this person from Commonwealth Bank was telling you that because they, Commonwealth Bank, got a notice that the insurance was being terminated that they, the bank, were going to put insurance on the property and they were going to add the cost of doing so to your mortgage; and you told them, go right ahead?

A: Yes.

N.T., deposition of Lorraine Shoemaker, September 9, 1996, at 17–19; R.R. at 38a–39a (emphasis added). Thus, Mrs. Shoemaker claims that the misrepresentation that forms the basis of her and her husband's fraud claim was Commonwealth's promise to obtain insurance for their home.

█ It is well-established that the breach of a promise to do something in the future is not actionable in fraud. *Krause v. Great Lakes Holdings, Inc.*, 387 Pa.Super. 56, 67, 563 A.2d 1182, 1187 (1989); *Edelstein v. Carole House Apartments, Inc.*, 220 Pa.Super. 298, 303, 286 A.2d 658, 661 (1971). The Shoemakers base their fraud claim on Commonwealth's alleged promise that it would obtain an insurance policy for their home if they failed to do so. Commonwealth was, therefore, promising to take future action. Thus, Commonwealth's promise cannot form the basis of a cause of action in fraud. *See Krause, supra*, at 67, 563 A.2d at 1187 (an oral representation that a party would assume a debt obligation in exchange for the forbearance from legal action was not actionable in fraud because the representation was a promise to do something in the future); *Edelstein, supra*, at 304, 286 A.2d at 661 (a promise to relieve person of liability if certain condition was met is not actionable in

fraud because representation was promise to do something in the future). We therefore hold that the trial court properly granted summary judgment on the fraud claim.

█ Mrs. Shoemaker next argues that the trial court erred by granting summary judgment on their promissory estoppel claim. The doctrine of promissory estoppel allows a party, under certain circumstances, to enforce a promise even though that promise is not supported by consideration. *See Thatcher's Drug Store of West Goshen, Inc., v. Consolidated Supermarkets, Inc.*, 535 Pa. 469, 476, 636 A.2d 156, 160 (1994); Restatement (Second) of Contracts § 90. To establish a promissory estoppel cause of action, a party must prove that: (1) the promisor made a promise that he should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. *Holewinski v. Children's Hospital of Pittsburgh*, 437 Pa.Super. 174, 178, 649 A.2d 712, 714 (1994), *appeal denied*, 540 Pa. 641, 659 A.2d 560 (1995); *Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 74, 384 A.2d 1228, 1233 (1978).

█ In their complaint, the Shoemakers allege that Commonwealth promised that it would purchase "adequate insurance" and add the cost of the premium to the cost of their loan. They further allege that they relied on this promise by not purchasing the insurance on their own and that injustice can be avoided only by enforcing Commonwealth's promise. Commonwealth, on the other hand, argues that the Shoemakers cannot enforce their claim through promissory estoppel because of the Shoemakers' contractual obligation to maintain insurance under the mortgage. Further, Commonwealth argues that even if such a promise was actionable, the facts alleged by the Shoemakers are insufficient to support their claim because they have not alleged that Commonwealth promised to maintain such insurance for a particular duration.

Our research has not discovered any Pennsylvania cases that have addressed the ques-

tion of whether a mortgagor who is obligated by a mortgage to maintain insurance on their property can establish a cause of action in promissory estoppel based upon an oral promise made by the mortgagee to obtain insurance. We have, however, discovered cases from other jurisdictions that have addressed this question, and the weight of this authority holds that such promises are actionable.

In *Graddon v. Knight*, 138 Cal.App.2d 577, 292 P.2d 632 (1956), a California appellate court considered whether homeowners, who were obligated under a deed of trust to procure and maintain fire insurance on their home, could establish a cause of action based upon an oral promise by a bank to obtain the insurance on the homeowners' behalf. The court first considered whether the bank's promise to obtain fire insurance was inconsistent with the term of the deed of trust that required the homeowners to concluded that the bank's promise was not inconsistent with the homeowners' obligation under the deed of trust because the deed required only that the homeowners procure and maintain insurance; the deed did not bar them from making a separate agreement under which another party would procure the insurance on their behalf. *Id.* at 635–36. The court then held that the evidence presented by the plaintiffs was sufficient to establish a cause of action in promissory estoppel because the plaintiffs relied to their detriment on the bank's promise to obtain insurance. *Id.* at 636–37; *cf. Franklin Investment Co., Inc. v. Huffman*, 393 A.2d 119, 122 (D.C.1978) (a gratuitous promise to procure insurance on an automobile obligated the promisor under an estoppel theory to fulfill the promise and obtain insurance); *East Providence Credit Union v. Geremia*, 103 R.I. 597, 239 A.2d 725, 727–28 (1968) (an owner of chattels could recover based on a theory of promissory estoppel where a loan agreement obligated the owner to maintain insurance on the property; the owner relied on the lender's promise to obtain such insurance, the lender failed to do so and property destroyed) (dicta); *Estes v. Lloyd Hammerstad, Inc.*, 8 Wash.App. 22, 503 P.2d 1149, 1152 (1972) (a gratuitous promise to obtain insurance was enforceable under an estoppel theory). In

accord with these cases, illustration 13 to comment e of section 90 of the Restatement (Second) of Contracts provides:

A, a bank, lends money to B on the security of a mortgage on B's new home. The mortgage requires B to insure the property. At the closing of the transaction A promises to arrange for the required insurance, and in reliance on the promise B fails to insure. Six months later the property, still uninsured, is destroyed by fire. The promise is binding.

Restatement (Second) of Contracts § 90, cmt. e, illus. 13. *See also Murphy v. Burke*, 454 Pa. 391, 398, 311 A.2d 904, 908 (1973) (adopting section 90 as Pennsylvania law). We find this authority persuasive and thus we reject Commonwealth's claim that the Shoemakers cannot maintain a cause of action because of their obligation under the mortgage to maintain insurance on the property.

■ We must next determine whether the Shoemakers' allegations and the evidence that they have presented are sufficient to create genuine issues of material fact with regard to each element of a promissory estoppel cause of action and thus survive Commonwealth's motion for summary judgment. The first element of a promissory estoppel cause of action is that the promisor made a promise that he should reasonably have expected to induce action or forbearance on the part of the promisee. *Holewinski, supra,* at 178, 649 A.2d at 714. The Shoemakers have alleged that the bank promised to obtain insurance on their behalf and that it would add this cost to their mortgage payment. Mrs. Shoemaker testified in her deposition and swore in an affidavit that a representative from Commonwealth stated that the bank would acquire insurance if she did not and that she instructed the representative to take that action. Because the Shoemakers claim that Commonwealth's promise to obtain insurance was, essentially, conditioned upon the Shoemakers course of conduct, i.e., that Commonwealth would obtain insurance if they did not, we conclude that this evidence, if believed, would be sufficient to allow a jury to find that Commonwealth made a promise upon which it reasonably should

have expected the Shoemakers to rely. *See Holewinski, supra.*

The second element of a promissory estoppel cause of action is that the promisee actually relied upon the promise. *Id.* at 178, 649 A.2d at 714. The Shoemakers allege that they actually relied upon Commonwealth's promise and, thus, failed to obtain insurance. In support of this allegation, Mrs. Shoemaker testified in her deposition and swore in her affidavit that she instructed Commonwealth's representative to acquire insurance on her behalf. We conclude that this evidence, if believed, would be sufficient to allow a jury to find that the Shoemakers relied upon Commonwealth's promise to obtain insurance. *See Holewinski, supra.*

The final element of a promissory estoppel cause of action is that injustice can be avoided only by enforcement of the promise. *Id.* at 178, 649 A.2d at 714. One of the factors that a court may consider in determining whether a promisee has satisfied this element is "'the reasonableness of the promisee's reliance.'" *Thatcher's Drug Store, supra,* at 477, 636 A.2d at 160, quoting Restatement (Second) of Contracts § 90, cmt. b. Mrs. Shoemaker testified that she and her husband received no communication from Commonwealth regarding their insurance after her conversation with a Commonwealth representative in early 1994. Commonwealth, on the other hand, asserts that it sent the Shoemakers letters informing them that their house would be uninsured after December 1, 1994. We conclude that this evidence is sufficient to create a genuine issue of material fact regarding the reasonableness of the Shoemakers' reliance. Accordingly, we hold that the trial court erred by granting summary judgment on the Shoemakers' promissory estoppel claim.

Finally, the Shoemakers also allege a breach of contract cause of action in their complaint. The trial court granted summary judgment on that claim. Mrs. Shoemaker has made no argument in regard to the contract claim in her brief to this Court. Accordingly, we conclude that she has waived any argument that the trial court erred by granting summary judgment on the contract claim. *Olmo v. Matos,* 439 Pa.Super. 1, 9, 653 A.2d 1, 5 (1994), *appeal denied,* 541 Pa. 652, 664 A.2d 542 (1995) (failure to develop argument in the brief results in waiver of the issue).

We therefore reverse that portion of the trial court's order that granted summary judgment on the Shoemakers' promissory estoppel claim and remand for trial on that claim. We affirm the grant of summary judgment on the Shoemakers' fraud and breach of contract claims.

Order **AFFIRMED** in part, **REVERSED** in part. Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED**.